1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11

ADDISON J. T., an Individual,[1]

Case No.: 8:24-02085 ADS

12

Plaintiff,

13

v.

MEMORANDUM OPINION AND ORDER

14

FRANK BISIGNANO, Commissioner of Social Security,[2]

15

16

Defendant.

17

## I.    INTRODUCTION

18

19

Plaintiff Addison J. T. ("Plaintiff") challenges the denial of her application for

20

child's insurance benefits and Supplemental Social Security Income ("SSI") benefits by

21

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

22

[2] Frank Bisignano became Commissioner of Social Security on May 7, 2025.  Under Federal Rule of Civil Procedure 25(d), he is automatically substituted for Martin O'Malley as Defendant in this suit.

23

24

1    Defendant Frank Bisignano, Commissioner of Social Security's (hereinafter

2    "Commissioner" or "Defendant").  Plaintiff contends that the Administrative Law Judge

3    ("ALJ") failed to properly evaluate the mental assessments of the consultative

4    neurologist and incorporate these into the assessment of Plaintiff's residual functional

5    capacity ("RFC").  (Dkt. No. 12, Plaintiff's Brief ("Pl. Br.").)  For the reasons stated

6    below, the decision of the Commissioner is affirmed, and this matter is dismissed with

7    prejudice.

8    **II.    <u>FACTS RELEVANT TO THE APPEAL</u>**

9            A review of the record reflects certain facts relevant to this appeal.  Plaintiff is in

10   her early twenties. (AR 84.)  Plaintiff graduated high school with all "A" and "B" grades,

11   including in honors and Advanced Placement classes.  (AR 1102.)  Plaintiff took some

12   college classes and testified that she took a leave of absence from college.  (<u>Id.</u>)  Plaintiff

13   testified that she worked part-time as a host at Outback Steakhouse, a family restaurant,

14   for four to five hours a week.  (AR 82.)  Plaintiff testified that she gets overwhelmed

15   easily, has meltdowns, along with migraines, and has episodes where she is unable to

16   walk, talk or think, and experiences tremors.  (AR 85–86.)  Plaintiff testified she is only

17   actively taking clonazepam and hydroxyzine as needed, once or twice a week, and a

18   monthly migraine injection.  (AR 97.)  Plaintiff's medical records show that she has

19   visited many medical providers over the span of several years, with reported symptoms

20   of shortness of breath, chest pain, wrist/hand pain, leg pain, palpitations, vertigo and

21   migraines, but her test results and imaging were unremarkable (AR 768, 774, 775, 782,

22   789, 1007, 1026, 1029–1033, 1109, 1158, 1161.)

23

24

1    **III.    SUMMARY OF PROCEEDINGS BELOW**

2         On March 27, 2024, the ALJ found Plaintiff was not disabled within the meaning

3    of the Social Security Act.  (AR 27.)  The ALJ followed the required five-step sequential

4    evaluation process under the Social Security Act to assess whether Plaintiff was

5    disabled.[3]  See 20 C.F.R. § 404.1520(a).  At **step one**, the ALJ found that Plaintiff had

6    not been engaged in substantial gainful activity since January 1, 2019, the alleged onset

7    date.  (AR 20.)  At **step two**, the ALJ found that Plaintiff had the following severe

8    impairments: anxiety, depression, mild ASD (Aspergers) with ADHD, "dysautonomia vs

9    functional neurological disorder", and migraines.  (AR 20–21.)

10        At **step three**, the ALJ found that Plaintiff did not have an impairment or

11   combination of impairments that met or medically equaled the severity of one of the

12   listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings").  (AR 21–

13   22.)  The ALJ then found that Plaintiff had the RFC[4] to

14               perform light work as defined in 20 CFR 404.1567(b) and
             416.967(b), with the following additional limitations:
15           occasional postural activities; no ladders, scaffolds, or ropes;
             no unprotected heights or dangerous moving machinery;
16           simple tasks in a routine environment; occasional interaction

17   _____

18   [3] The ALJ follows a five-step sequential evaluation process to assess whether a claimant
     is disabled: Step one: Is the claimant engaging in substantial gainful activity?  If so, the
19   claimant is found not disabled.  If not, proceed to step two.  Step two: Does the claimant
     have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not
     disabled is appropriate.  Step three: Does the claimant's impairment or combination of
20   impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?
     If so, the claimant is automatically determined disabled.  If not, proceed to step four.
21   Step four: Is the claimant capable of performing his past work?  If so, the claimant is not
     disabled.  If not, proceed to step five.  Step five: Does the claimant have the residual
22   functional capacity to perform any other work?  If so, the claimant is not disabled.  If
     not, the claimant is disabled.  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1996) (as
23   amended).
     [4] An RFC is what a claimant can still do despite existing exertional and nonexertional
24   limitations.  See 20 C.F.R. § 404.1545(a)(1).

1    with coworkers, supervisors and the public; no fast paced
2    work such as rapid assembly or conveyor belt work.

3    (AR 23.)

4    At **step four**, the ALJ found Plaintiff has no past relevant work.  (AR 31.)  At

5    **step five**, considering Plaintiff's age, education, work experience, and RFC, the ALJ

6    found that there were jobs existing in significant numbers in the national economy that

7    Plaintiff could perform, including representative occupations such as routing clerk,

8    marker, and photocopy machine operator.  (AR 31–32.)  Accordingly, the ALJ

9    determined that Plaintiff has not been under a disability from January 1, 2019, through

10    the date of the ALJ's decision.  (AR 32.)

11    The ALJ's decision became the Commissioner's final decision when the Appeals

12    Council denied Plaintiff's request for review on August 1, 2024.  (AR 2.)  Plaintiff then

13    filed this action in District Court on September 25, 2024, challenging the ALJ's decision.

14    (Dkt. No. 1, Compl.)

15    On November 11, 2024, Defendant filed an Answer and Certified Administrative

16    Record.  (Dkt. No. 11, AR.)  Plaintiff filed an opening brief ("Plaintiff's Brief") on

17    December 26, 2024.  ("Pl. Br.", Dkt. No. 12.)  Defendant filed a responding brief

18    ("Defendant's Brief") on January 27, 2025.  ("Def. Br.", Dkt. No. 15.)  Plaintiff did not

19    file a reply brief.  The case is ready for decision.[5]

20    **IV.    ANALYSIS**

21    Plaintiff raises the issue of whether the ALJ properly incorporated the opinion of

22    the consultative neurologist into the RFC. (Pl. Br. 4.)

23    _____

24    [5] The parties filed consents to proceed before a United States Magistrate Judge,
pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. (Dkt. Nos. 6, 9.)

## A.    Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g).  The District Court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied.  Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).  The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence.  Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).

## B.    Plaintiff's RFC Is Supported by Substantial Evidence

Plaintiff maintains the ALJ erred by failing to incorporate into the RFC assessments made by Dr. Sarah Maze, a consultative neurologist, regarding stress and contact with others.  (Pl. Br. at 4–5.)  Plaintiff contends that the ALJ found persuasive Dr. Maze's opinion that Plaintiff would function best in a low-stress environment with minimal contact with others.  (Pl. Br. at 4 (citing AR 1300).)  Plaintiff asserts that the ALJ erred because he did not include Dr. Maze's limitation of "minimal contact with others" in the RFC, nor did he include a stress limitation.  (Pl. Br. at 5.)

In opposition, Defendant responds that the ALJ reasonably translated Plaintiff's limitations into concrete functional limitations in the RFC.  (Def. Br. at 5–8.)  Specifically, Defendant argues Dr. Maze's assessment that Plaintiff would do best with minimal contact with others was reasonably accommodated in the RFC by the limitation

1   of occasional contact with coworkers, supervisors and others.  (Def. Br. at 11.) Similarly,

2   according to Defendant, by limiting Plaintiff's RFC to simple tasks in a routine

3   environment with no fast-paced work, the ALJ accounted for Plaintiff's limited stress

4   tolerance assessed by Dr. Maze.  (Def. Br. at 12.)

5                    1.   Legal Standard for Evaluating RFC

6          An RFC is "an assessment of an individual's ability to do sustained work-related

7   physical and mental activities in a work setting on a regular and continuing basis."  SSR

8   96-8p; see also 20 C.F.R. § 404.1545(a).  In formulating the RFC, the ALJ must account

9   for all the claimant's medically determinable impairments, including those that are not

10  "severe," and evaluate "all of the relevant medical and other evidence."  Id.; see also

11  Valentine v. Comm'r Social Sec. Admin., 574 F.3d 685, 690 (holding that "an RFC that

12  fails to take into account a claimant's limitations is defective"); Hill v. Astrue, 698 F.3d

13  1153, 1161-62 (9th Cir. 2012) (explaining it is error to assess an incomplete RFC that

14  ignores "significant and probative evidence").

15         An RFC assessment is ultimately an administrative finding reserved to the

16  Commissioner.  See 20 C.F.R. § 404.1546(c).  The RFC does not need to directly

17  correspond to a specific medical opinion; rather, "the ALJ is responsible for translating

18  and incorporating clinical findings into a succinct RFC."  Rounds v. Comm'r of Soc. Sec.

19  Admin., 807 F.3d 996, 1006 (9th Cir. 2015); see also Stubbs-Danielson v. Astrue, 539

20  F.3d 1169, 1174 (9th Cir. 2008) (noting the ALJ's responsibility to weigh conflicting

21  medical evidence and translate accepted medical opinions into "concrete restrictions").

22  The ALJ's RFC assessment should be affirmed if the ALJ applied the proper legal

23  standard and the decision is supported by substantial evidence in the record.  See

24  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

2.  The ALJ Properly Assessed Plaintiff's RFC

First, the ALJ's RFC assessment was supported by substantial evidence.  The ALJ carefully considered the entire record, all Plaintiff's subjective symptoms and the extent to which those symptoms could be reasonably accepted as consistent with the objective medical evidence of the record.  (AR 23.)  The ALJ discussed a July 2021 mental assessment of Plaintiff that showed good cognitive ability, sad and anxious mood but normal range affect and a diagnosis of generalized anxiety disorder and mild, recurrent major depressive disorder.  (AR 26.)  The ALJ also included in the decision the results of a complete psychological evaluation performed by Jennifer Manavi, Psy.D., which stated that Plaintiff was cooperative and polite, and Plaintiff's concentration, persistence, pace and speech were within normal limits, while Plaintiff reported her mood as "kinda stressed out".  (Id.)

The decision includes detailed discussions of at least five other neuropsychological evaluations of Plaintiff.  (AR 28–29.)  These evaluations were performed by different medical professionals, and reported, among other results, "good eye contact, cooperative behavior", "focused attention and concentration", "good cognitive ability", and normal executive functional skills.  (Id.)  These evaluations also reported Plaintiff had unusually slow processing speed, normal performance on all tasks "requiring sustained attention", average intellectual functioning, highly anxious mood, and that Plaintiff was alert and attentive.  (Id.)  The ALJ provided a reasonable analysis of Dr. Maze's evaluation of Plaintiff, noting that Dr. Maze opined that Plaintiff presented with an "unremarkable neurological examination, and Plaintiff's multiple subjective complaints could not be explained by objective findings".  (AR 30.)

1    Furthermore, a thorough review of the record shows that the medical evidence

2  supports the limitations assessed in the RFC.  (See AR 1095 (Psychologist reported

3  Plaintiff did not have a "history of interpersonal difficulties" and would "have no

4  difficulty to interact appropriately with teachers, adults and peers on a consistent

5  basis"), AR 1395 (Plaintiff could respond to imaginary situations requiring social

6  judgment appropriately in evaluation), and AR 1396-97 (Plaintiff presents with

7  significant anxiety and moderate inability to interact appropriately with others but

8  Plaintiff would be able to make simplistic work-related decisions without special

9  supervision).)

10    In addition, the ALJ properly evaluated and discussed nonmedical evidence that

11  supported his RFC finding.  This included evidence of Plaintiff's activities such as

12  driving, shopping, attending regular classes, and working part-time as a host in a

13  restaurant.  (AR 28.)  There is ample evidence in the record of Plaintiff's activities and

14  abilities which would make a more conservative RFC assessment inappropriate.  (See

15  AR 82 (Plaintiff works as a host at Outback Steakhouse), AR 486 (Plaintiff helps with

16  "chores around the house"), AR 1100 (Plaintiff was a "high achieving, general education

17  honors student"), and AR 1391 (Plaintiff attends some college classes).)  Substantial

18  evidence from the record cited in the ALJ's decision supports the RFC assessment of

19  light work with some specific exertional limitations and nonexertional limitations of

20  simple tasks in a routine environment with no fast-paced work and occasional

21  interaction with coworkers, supervisors and the public.  (AR 23.)

22    Second, the RFC was consistent with Dr. Maze's opinions regarding stress and

23  minimal social contact.  An RFC need not precisely reflect any particular medical

24  opinion, because it is the "responsibility of the ALJ, not the claimant's physician, to

-8-

1  determine residual functional capacity." See Vertigan v. Halter, 260 F.3d 1044, 1049

2  (9th Cir. 2002); Sandoval v. Comm'r of Soc. Sec., 2022 WL 3229829, at *4 (E.D. Cal.

3  Aug. 10, 2022) (explaining that an RFC need not "mirror a medical opinion").  When the

4  medical evidence establishes difficulties in specific areas of mental functioning, the ALJ

5  can properly translate them into concrete restrictions without repeating each functional

6  limitation verbatim in the RFC assessment. See Kitchen v. Kijakazi, 82 F.4th 732, 740

7  (9th Cir. 2023) (finding that the RFC limitation of working "away from the public" and

8  "in an environment that does not require close cooperation with coworkers and

9  supervisors" adequately tracked the physician's opinion claimant would have

10  interpersonal problems in an employment situation)(cleaned up).

11      Plaintiff contends that the ALJ failed to include in the RFC assessment Dr.

12  Maze's opinion that "Plaintiff would function best in a low-stress environment with

13  minimal contact with others" despite not discounting the opinion. (AR 1300.)  However,

14  the ALJ's role in assessing the RFC is not to define the conditions under which, Plaintiff

15  would "best" function.  The ALJ is tasked with articulating what a plaintiff can still do

16  despite existing exertional and nonexertional limitations.  See 20 C.F.R. §

17  404.1545(a)(1).  Finding that Plaintiff must not have more than "occasional interaction"

18  with others is consistent with a medical opinion that Plaintiff would function best with

19  minimal contact.  This is especially true because, as Plaintiff concedes, Dr. Maze's

20  descriptor of "minimal" is not defined by the Commissioner, while occasional means

21  very little up to one-third of the time.  (Pl. Br. at 5 (citing Leach v.Kijakazi, 70 F.4th

22  1251, 1258 (9th Cir. 2023)).)

23      Similarly, the RFC limiting Plaintiff to simple tasks in a routine environment with

24  no fast-paced work, is consistent with Dr. Maze's opinion that Plaintiff would function

1  best in a low stress environment.   This RFC accommodates Dr. Maze's opinion

2  regarding stress, because the limitations in the RFC would reduce the stress level of

3  Plaintiff's work environment.  See Boyer v. Berryhill, No. C18-5263 RAJ, 2018 WL

4  6266607, at *6 (W.D. Wash. Nov. 30, 2018) ("The ALJ accounted for plaintiff's reduced

5  ability to cope with stress…by limiting him to simple, routine, repetitive tasks and

6  simple decisions. Avoiding complex decisions and tasks, and reducing interactions with

7  people, reduces stress."); see also Keller v. Colvin, 2014 WL 130493, at *3 (E.D. Cal. Jan.

8  13, 2014) ("Limiting plaintiff to simple repetitive tasks with reduced interpersonal

9  contact accommodated [Physician's] limitation with respect to job stress.")  The Court

10  upholds the ALJ's RFC assessment because it is consistent with restrictions identified in

11  the medical testimony and supported by substantial evidence.  See Stubbs-Danielson v.

12  Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ's RFC adequately captures restrictions

13  identified in medical testimony when it is consistent with those restrictions).

14  **V.    CONCLUSION**

15      For the reasons stated above, the decision of the Social Security Commissioner is

16  AFFIRMED, and the action is DISMISSED with prejudice.  Judgment shall be entered

17  accordingly.

18

19  DATED:  08/29/2025

20                          /s/ Autumn D. Spaeth
                        THE HONORABLE AUTUMN D. SPAETH
21                      United States Magistrate Judge

22

23

24